**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY W. McWILLIAMS,** | : | **Civil No. 3:12-CV-212** |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Caputo)** |
| | : | |
| **LT. SNYDER et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.  INTRODUCTION

In this case, plaintiff Jeffrey W. McWilliams brought claims against a number of corrections officers and employees of the Adams County Adult Correctional Complex, alleging that the defendants subjected him to unlawful excessive force, and possibly were indifferent to his medical needs, in violation of the Eighth Amendment during the course of incidents that occurred on or about May 19 and 20, 2010.  (Doc. 44, Am. Compl.)

As a *pro se* litigant the plaintiff was advised by this Court at this outset of this lawsuit of his responsibilities in this litigation.  Thus, on March 13, 2012, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his responsibility to reply to defense motions, and warned him in clear and

precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 7, p. 3.)

This Standing Practice Order also advised McWilliams of his duty to respond to summary judgment motion and informed him that: "If a party opposing a summary judgment motion does not support such opposition as required by Rule 56, the motion for summary judgment shall be considered solely upon the affidavits or other supporting evidentiary material filed by the moving party, if any, and the motion may be granted." (Id., p. 4.)

On February 8, 2013, the Adams County defendants collectively moved for summary judgment on the plaintiff's claims. (Doc. 62.) On the same day, the Adams County defendants filed briefs in support of the motion (Docs. 63, 64.) and a statement of undisputed material facts. (Doc. 65.)

In the seven months since the filing of the defendants' motion, the plaintiff has not responded in any fashion, in contravention of the Local Rules of this Court, and

in spite of court orders directing that he respond. The plaintiff's failure to respond or to otherwise meaningfully prosecute his claims in this case has now caused this litigation to come to a standstill, and compels us to recommend that the defendants' motion for summary judgment be granted as unopposed, and because there is no evidence in the record to support the plaintiff's claims.[1]

---

[1] During this calendar year, the plaintiff's contact with the Court, and attention to this litigation, has been minimal. Indeed, other than to notify the Court on March 7, 2013, that his address had changed (Doc. 66.), the only communication that the plaintiff has had with the Court in 2013 occurred on August 8, following our issuance of an order on July 18, 2013, to show cause why the defendants' motion for summary judgment – which by this time had been pending for six months – should not be granted as unopposed. (Doc. 70.) In a short statement filed on July 18, 2013, the plaintiff indicated that he had been waiting to file a responsive brief until he was ordered to do so by the Court. (Doc. 72.) The plaintiff also suggested that he would need until sometime in October, 2013 to file his brief, and he suggested that he would prefer simply to settle this matter for no more than $10,000. (Id.) On August 13, 2013, we issued an order in response directing the plaintiff to file a responsive brief by August 23, 2013. (Doc. 74.) In addition, to ensure that the plaintiff was afforded every opportunity to comply with the order and file a responsive brief as directed, we instructed the Clerk of Court to provide the plaintiff with additional courtesy copies of the defendants' motion for summary judgment, brief in support, and statement of material facts. (Id.) Nevertheless, the plaintiff has not complied with that order, has not filed a responsive brief, has not disputed the evidentiary record submitted by the defendants, and has had no further contact with the Court.

## II. DISCUSSION

### A. Under The Rules of This Court This Motion for Summary Judgment Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in this motion to dismiss, since the plaintiff has failed to timely oppose the motion, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the rules of this Court imposes an affirmative duty on the plaintiff to respond to motions, and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

Although a district court typically should not grant summary judgment solely on the basis that a motion for summary judgment has not been opposed, <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir. 1991), in some cases it may be appropriate to grant a motion as unopposed "if a party fails to comply with the rule after a specific direction to comply from the court", <u>id.</u> In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a response to the defendants' motion, despite being expressly instructed to do so months after the defendants filed and briefed their motion. Therefore, these procedural defaults by the plaintiff compel the Court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our

system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion.'" Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the defendants' motion to dismiss, despite having been afforded extensions of time in which to do so, and in disregard of this Court's orders directing that he file a response. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose this motion.

### B. Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the court, and will not be disturbed absent

an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the district court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)). Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is

dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

"Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third <u>Poulis</u> factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' <u>Adams</u>, 29 F.3d at 874." <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted). Here, the plaintiff has failed to respond to a defense motion for summary judgment, and has not complied with orders of the Court. Thus, the plaintiff's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund,</u> 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the

plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the Court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. Put simply, the plaintiff cannot refuse to

address the merits of his claims, and the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, upon consideration of the defendants' motion for summary judgment, and the evidence that has been offered in support of their motion without any challenge by the plaintiff, causes us to find that the motion for summary judgment should also be granted on its merits.

## C.    The Motion Should Be Granted on Its Merits

In support of their motion, the defendants have submitted a statement of undisputed facts, together with evidence in support of each of the facts asserted to be undisputed.  (Doc. 65.)  Because the plaintiff has failed to contest these factual assertions in any way, and because these factual assertions have been properly supported by evidence of record in accordance with Federal Rule of Civil Procedure 56 and Local Rule 56.1, we now consider whether this factual record, standing alone, supports the defendants' motion.

### 1.    Facts Surrounding the May 19, 2010 - May 20, 2010 Incidents at the Adams County Adult Correctional Facility

The facts adduced in this case reveal that the plaintiff was an inmate at the Adams County Correctional Facility on May 19 and 20, 2010, where he was being

held on rape and kidnapping charges, to which he later entered a negotiated guilty plea on January 20, 2010. (Doc. 65, Def. Statement of Undisputed Facts ¶ 1; Ex. A, Court of Common Pleas docket entries.) The plaintiff was sentenced for these crimes on April 22, 2010. (Id.)

On May 19, 2010, at approximately 3:50 p.m., while in his cell at the Adams County Adult Correctional Complex, the plaintiff placed a sheet around his neck as if he intended to hurt himself. (Def. SMF ¶ 5; Ex. C, Deposition of Jeffrey McWilliams, Exhibit 2 thereto.) In response, Lieutenant Michael Giglio decided to place the plaintiff in a psychiatric cell, and accordingly requested that the plaintiff be handcuffed and moved to the new cell. (Def. SMF ¶ 6; Ex. C.)

While being escorted to the new cell, the plaintiff began resisting and became violent. During this escort, the plaintiff threatened to harm officers, making statements such as "I'm going to kill you Groff" and "Take these cuffs off and I'll kill all of you." (Def. SMF ¶ 7; Ex. C.) The plaintiff also attempted to harm himself at this time by banging his head off of his cell door, resulting in the plaintiff being placed in a restraint chair. (Def. SMF ¶ 8; Ex. C.) The plaintiff was administered care by a prison nurse during this time, in accordance with doctor's orders. (Def. SMF ¶ 9.) At approximately 5:18 p.m. on May 19, 2010, the plaintiff was removed from the restraint chair. (Id.)

On May 20, 2010, at approximately 7:22 a.m., the plaintiff began being disorderly and commenced making threatening statements against prison staff and himself. (Def. SMF ¶ 10.) The plaintiff requested to speak with a mental health counselor, but was told she was not yet at work that day. (Def. SMF ¶ 11; Ex. B, McWilliams Dep. at 51; Ex. D, Affidavit of Mark Skelton.) The plaintiff then asked to see the nurse for a headache, but was told she was currently making rounds. (Def. SMF ¶ 12; Ex. D, Skelton Aff.) At this point, the plaintiff began beating on his cell door, and demanded to see the mental health counselor immediately. (Def. SMF ¶ 13; Ex. D, Skelton Aff.) During this time, the plaintiff continued to beat on his cell door and threatened to kill himself. (Def. SMF ¶ 14; Ex. E.) In addition, the plaintiff made statements threatening to harm correctional officers, and continued these threats after he saw the prison nurse arrive at his cell. (Def. SMF ¶¶ 15-17.)

The plaintiff next began attempting to harm himself, both by hitting and kicking his cell door and then by choking himself with his blanket. (Def. SMF ¶¶ 18-19; Ex. F, Affidavit of Jaime Kelly, LPN.) The plaintiff choked himself with such force that his face turned a dark plum-red color. (Def. SMF ¶ 20; Ex. F, Kelly Aff.) Concerned that the plaintiff might be seriously hurting himself, correctional staff told the plaintiff to submit to handcuffs, at which point the plaintiff took up a fighting stance in his cell. (Def. SMF ¶ 22; Ex. B, McWilliams Dep. at 54.)

In response, correctional officers administered two bursts of pepper spray and opened the plaintiff's cell door, after which the plaintiff was escorted to his bunk and handcuffed. (Def. SMF ¶ 23; Ex. D, Skelton Aff.) Thereafter, the plaintiff was escorted to a shower for post-exposure decontamination, and then placed in a restraint chair. (Def. SMF ¶ 24; Ex. D, Skelton Aff.) While the plaintiff's restraints were being adjusted, he spit on Lieutenant Snyder, hitting him in the forehead. (Def. SMF ¶ 25; Ex. G, Affidavit of Larry Snyder.)

For spitting on this officer, and for refusing to comply with prison officials' instructions, on May 20, 2010, charges were initiated against the plaintiff in criminal action filed in the Adams County Court of Common Pleas. (Def. SMF ¶ 26; Ex. H.) On December 6, 2011, the plaintiff pleaded *nolo contendere* to the charge of aggravated harassment by a prisoner, in violation of 18 Pa. Cons. Stat. Ann. § 2703.1, and the court accepted this plea. (Def. SMF ¶ 27; Ex. H.) The plaintiff was sentenced to a prison term of 27 to 54 months for this crime. (Def. SMF ¶ 28.)

During the incident on May 20, 2010, the plaintiff was not kicked in the ribs or legs, and officers did not use an electric body immobilization device as part of their efforts to restrain him. (Def. SMF ¶¶ 29-30.) The defendants administered two short bursts of pepper spray, after which the plaintiff immediately became compliant, and was decontaminated and examined by medical staff after the incident; this

examination revealed that McWilliams had not suffered any injury. (Def. SMF ¶¶ 23-24, 32.)

## 2.  The Plaintiff's Eighth Amendment Claims

Against this factual backdrop, McWilliams advances two distinct Eighth Amendment claims against the Corrections defendants in his complaint, alleging, with varying degrees of clarity, constitutional claims under the Eighth Amendment, asserting that prison staff violated his Eighth Amendment rights by: (1) using excessive force against him; and perhaps by (2) displaying deliberate indifference to his medical needs.

### a.  Overview of Relevant Legal Standards

Each of these Eighth Amendment claims is, in turn, judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction. All of the various claims, however, are governed by the same overarching and animating constitutional benchmarks. As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment

forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000)

With these tenets in mind we turn to a consideration of the individual Eighth

Amendment claims advanced here by McWilliams.

### i.    Excessive Force Claims

Eighth Amendment excessive force claims entail a showing of some subjective

intent to injure. In an excessive force case, where "prison officials stand accused of

using excessive physical force in violation of the Cruel and Unusual Punishments

Clause, the core judicial inquiry is that set out in Whitley[v. Albers, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Thus, the keystone to analysis of an Eighth Amendment excessive force claim often entails issues of motivation–whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). However, the issue of whether excessive force was used is one which, in proper circumstances, can be determined as a matter of law. In such cases, summary judgment is appropriate when "it appears that the evidence, viewed in the light most favorable to the plaintiff, will [not] support a reliable inference of wantonness in the infliction of pain." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley, 475 U.S. at 322). There are several factors that a court examines in determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the

basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" <u>Id.</u> at 106.

When considering such claims, the reasonableness of a particular use of force is often dependent upon factual context and must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Graham v. Connor</u>, 490 U.S. 386, 396-7 (1989). Moreover, in the context of prison excessive force claims, in determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992), "even if we concede [that an inmate] has established at most that prison officials over-reacted to the disturbance that he caused. . . , any such over-reaction would still fall short of supporting a finding that prison officials acted 'maliciously and sadistically to cause harm.'" <u>Fuentes v. Wagner</u>, 206 F.3d 335, 346 (3d Cir. 2000).

## ii. **Deliberate Indifference Claims**

The plaintiff's amended complaint also includes a vague suggestion that one of the defendants was deliberately indifferent to his mental health needs by refusing to call "Mrs. Sue," who we understand to be the mental health counselor who works at the prison. The undisputed evidence shows that the plaintiff was advised that the

mental health counselor had not yet arrived at the prison when he first requested to see her on May 20, 2010. There is no evidence to show that any of the defendants deliberately withheld medical care or treatment from the plaintiff, and the law in this field further demonstrates that the plaintiff's claims fall far short of what is required in order to maintain a deliberate indifference claim.

The law recognizes that prison officials may not be deliberately indifferent to harms or injuries suffered by inmates. In Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001), the Court of Appeals explained the basic requirements of deliberate indifference claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

Id. at 125 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." Id. This deliberate indifference standard "is a subjective standard under Farmer – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." Id. Thus, " [d]eliberate indifference can be shown when a prison official

*knows of and disregards* an excessive risk to inmate health or safety' Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added). Accordingly, "to survive summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in Beers-Capitol, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need also involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

### iii. The Evidence Does Not Support an Eighth Amendment Claim Under Either Theory

Considering the plaintiff's vaguely pled Eighth Amendment claims within the context of the foregoing legal guidelines compels us to conclude that the defendants are entitled to summary judgment on each of the plaintiff's theories of liability.

As a threshold matter, there is no evidence at all to support the plaintiff's suggestion that C/O Weible "[s]at on the block and watched these actions take place as he knew this would never have happened if he would have called Mental Health, Mrs. Sue, but he denied (the plaintiff) that." (Def. 44, Am. Compl. at 2.) To the extent the plaintiff is suggesting that this corrections officer was deliberately indifferent to some unspecified mental health need of the plaintiff, the claim finds no support in the record. The evidence shows only that shortly before 7:30 a.m. on May 20, 2010, the plaintiff began demanding to see the mental health counselor, but was informed that she had not yet arrived for work. Thereafter, the plaintiff grew increasingly agitated, belligerent, and volatile, eventually threatening to harm himself and others, and necessitating an unplanned use of force within his cell to restrain him.

The evidence regarding this use-of-force incident, which forms the basis for the plaintiff's excessive force claim, does not support the plaintiff's claims either. The evidence reveals that the plaintiff's increasingly violent, threatening, unpredictable

and recalcitrant actions inspired the need to use force in order to help restrain the before he caused further harm to himself or others. The evidence shows that this use-of-force incident was modest in scope, duration and intensity, as the responding officers did little more than administer two short bursts of pepper spray in order to gain control of the plaintiff. The evidence shows that the plaintiff was seen by medical staff after this incident, and was found not to have suffered any injuries resulting from this use of force.

It is clear that this limited action by corrections staff, standing alone, does not state a constitutional claim since courts have consistently found that an isolated discrete use of pepper spray does not state an Eighth Amendment claim. See, e,.g., Luciano v. Lindberg, 1:CV-09-01362, 2012 WL 1642466 (M.D. Pa. May 10, 2012) Picozzi v. Haulderman, Civ. No. 4:08–CV–0926, 2011 WL 830331, at *5 (M.D.Pa. Mar. 3, 2011) (plaintiff failed to establish an excessive use of force claim where record establishes that the force used, pepper spray, was necessary and the minimum amount needed to get the plaintiff to an area where she could be medically treated); Soto v. Dickey, 744 F.2d 1260, 1270 (4th Cir.1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary ... to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed).

The evidence submitted in this case, which the plaintiff has not disputed in any meaningful way, simply does not support the plaintiff's claims that corrections officers violated his Eighth Amendment rights on May 19 or 20, 2010, after they were called upon to respond to incidents involving the plaintiff's threatening and violent behavior. To the contrary, the evidence reveals that officers acted effectively, but also with control and minimal force, and that their actions resulted in the plaintiff being restrained without injury. There is no evidence at all to suggest that any defendant was deliberately indifferent any medical need that the plaintiff implies that he had at the time.

Thus, in summary, the plaintiff's failure to respond to the defendants' motion for summary judgment despite repeated orders to do so, and the undisputed evidence submitted in this case, now compel a finding that summary judgment in this action is appropriate and warranted.

## III. <u>RECOMMENDATION</u>

Accordingly, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 62.) be GRANTED and the case closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of September 2013

*S/Martin C. Carlson*

Martin C. Carlson

United States Magistrate Judge